IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MOMMY GINA TUNA RESOURCES, KING TUNA INC., JOAQUIN LU, and INTEGRAL SEAFOOD LLC, <br><br> Defendants. <br> _____ <br><br> WILLIAM R. KOWALSKI and HAWAII INTERNATIONAL SEAFOOD, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITRA MINA SEAFOOD CORPORATION, <br><br> Defendants. <br> _____ | CIV. NO. 05-00679 BMK <br> CIV. NO. 06-00182 BMK <br><br><br><br> ORDER GRANTING MOTION FOR APPLICATION OF RULE 25(C) |

## ORDER GRANTING MOTION FOR APPLICATION OF RULE 25(C)

Plaintiff William R. Kowalski ("Kowalski") has filed a Rule 25(c) motion to add three parties to this proceeding as successors in interest to Defendant Joaquin Lu ("Lu") and his sole proprietorship, Defendant Mommy Gina Tuna Resources ("MGTR"). The three parties Kowalski seeks to add are GJ Fresh LLC ("GJ Fresh"), Mommy Gina Tuna Resources, Inc. ("MGTR, Inc."), and Citra Mina Holdings, Inc. ("Citra Mina Holdings"). This motion was heard on April 4, 2008. After careful consideration of the motion, the supporting and opposing memoranda, and the arguments of counsel, Kowalski's motion is hereby GRANTED.

## RELEVANT LAW

Rule 25(c) of the Federal Rules of Civil Procedures provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "Rule 25(c) applies only to transfers of interest occurring during the pendency of the litigation and not to those occurring before the litigation begins." Andrews v. Lakeshore Rehabilitation Hosp. 140 F.3d 1405, 1407 (11th Cir. 1998). Whether to apply Rule 25(c) is committed to the discretion of the Court. Panther Pumps & Equipment Co. v. Hydrocraft, Inc., 566 F.2d 8, 23 (7th Cir. 1977).

DISCUSSION

I.  MOMMY GINA TUNA RESOURCES, INC.

Kowalski provides strong evidence demonstrating that Lu and MGTR transferred assets to MGTR, Inc. during the pendency of this litigation.  In his deposition, Lu admitted that he "gave MGTR, Inc. [his] interest in MGTR, and MGTR, Inc. or its other owners didn't have to buy that property," and that he had already been sued by Kowalski at the time he formed MGTR, Inc.  (Mem. Supp. Mot. 18.)  This admission is further buttressed by the deposition testimony of Lu's personal assistant, Meriam Amerkhan, who recalled a pre-incorporation meeting for MGTR, Inc. where it was decided that all of MGTR's employees would be "switched" to MGTR, Inc.  (Mem. Supp. Mot. 20.)  She further stated that after incorporation of MGTR, Inc., "the business that MGTR was doing was then carried on by MGTR, Inc." (Mem. Supp. Mot. 20.)

MGTR, Inc. provides little evidence to rebut Lu and Amerkhan's deposition testimony.  It relies almost entirely on a declaration by Lu, stating that "MGTR, Inc., received no assets – land, equipment, inventory, or goodwill – that are the subject of this litigation from any prior corporation," (Defs.' Ex. B, ¶ 3.) and that "MGTR, Inc., is neither a transferee nor successor in interest to any of my companies."  (Defs.' Ex. B, ¶ 3.)  These current self-serving statements alone are

insufficient to overcome the admissions Lu made during his deposition, corroborated by Amerkhan. Nowhere does Lu disavow his deposition testimony, or attempt to distinguish this testimony in some way.

MGTR, Inc. also contends that Kowalski waived his right to join MGTR, Inc. to these proceedings. This argument is based on the Court's denial without prejudice of an earlier Rule 25(c) motion regarding MGTR, Inc., where the Court wrote that it expected MGTR, Inc. to be joined under Rule 20, by the consent of the parties, by June 15, 2007. The Rule 20 joinder never occurred, and MGTR, Inc. claims that Kowalski is therefore precluded from now joining it under Rule 25. The Court disagrees. While Kowalski was expected to join MGTR, Inc. by a certain date, he was not ordered to do so. His original Rule 25(c) motion was denied without prejudice, and so Kowalski is within his rights to renew his motion at this time.

## II. CITRA MINA HOLDINGS COMPANY

Kowalski also produces substantial evidence that MGTR transferred assets to Citra Mina Holdings during the course of this litigation. Lu confirms in his deposition that "Citra Mina Property Holdings got that property [from MGTR] but didn't pay anything for it," (Mem. Supp. Mot. 17-18) and also that he himself is the majority shareholder of Citra Mina Holdings (Mem. Supp. Mot. 13). There is

less evidence about whether these transfers were made during the pendency of the litigation, but Lu does state that Citra Mina Holdings was formed "sometime in 2005" and that "maybe" it was formed in "late 2005." (Mem. Supp. Mot. 12.)  This suit was filed in October 2005.  Accordingly, in the absence of any opposition from Citra Mina Holdings, the Court finds that Kowalski has produced sufficient evidence for the Court to find that MGTR transferred assets to Citra Mina Holdings during the pendency of this suit.

III.  GJ FRESH, LLC

Finally, Kowalski argues that GJ Fresh is also a partial successor in interest to Lu and MGTR.  Here, the evidence of a transfer of assets is more circumstantial than the direct evidence demonstrating transfers to MGTR, Inc. and Citra Mina Holdings.[1]  When viewed as a whole, however, it is sufficient for the Court to find that Lu and/or MGTR transferred significant intangible assets to GJ Fresh during the pendency of this litigation.

The parties do not dispute that GJ Fresh was formed by Lu in late 2005, days before Kowalski filed a complaint naming Lu as a defendant.  There is also no dispute that GJ Fresh "imported no seafood until January 12, 2006, but that,

---

[1]Kowalski claims that this is due, at least in part, to Defendants' failure to provide him with the discovery he has requested on GJ Fresh.

between January 12, 2006 and December 30, 2006, GJ Fresh imported 1,193,080 pounds of seafood in 24 shipments, all of which came from MGTR or Citra Mina," two entities that are controlled by Lu. (Mem. Supp. Mot. 7.) Most importantly, Lu does not deny that he may have given clients and business goodwill to GJ Fresh. Lu's declaration, attached in response to Kowalski's motion, states that "[t]he only goodwill that GJ Fresh, LLC possibly received from me involves the sale of Carbon Monoxide ("CO") treated tuna." (Defs. Mem. Opp., Ex A, ¶ 5.) Given the context in which this declaration was offered, it seems reasonable to construe this statement as an admission by Lu that he transferred certain intangible assets to GJ Fresh.

Nonetheless, GJ Fresh opposes joinder on three grounds. First, GJ Fresh argues that it cannot be joined because it was formed prior to the commencement of this litigation. While that is true, Rule 25(c) only requires that the transfer of assets have occurred during the pendency of the litigation, not that the recipient entity have been created during the pendency of the litigation. See Andrews, 140 F.3d at 1407 (11th Cir. 1998) (stating that "Rule 25(c) applies only to transfers of interest occurring during the pendency of the litigation and not to those occurring before the litigation begins"). Given that GJ Fresh did not register to do business in California until January of 2006, and did not begin actually importing fish until 2006, it seems more likely than not that Lu transferred assets to GJ Fresh

after the lawsuit was filed, and not in the six days between GJ Fresh's incorporation in Delaware on October 20, 2005 and the filing of Kowalski's suit on October 26, 2005.

Second, GJ Fresh argues that a mere transfer of assets, by itself, is not sufficient "to deem an entity as a continuation of another." (Defs.' Mem. Opp. 15.) Rule 25(c), however, does not require that the party to be joined be a continuation of the other party, just that the transfer of "an interest" have occurred. Fed. R. Civ. P. 25(c).

Finally, GJ Fresh argues that joinder is improper because "any business contacts that may have been provided to GJ Fresh relate to the CO treated tuna market, and . . . not the filtered wood smoke treated tuna market." (Defs.' Mem. Opp. 15.) Rule 25(c), however, does not require that the interest to be transferred must be materially related to the litigation. See <u>Minnesota Min. & Mfg. Co. v. Eco Chem, Inc.</u>, 757 F.2d 1256, 1263 (stating that "[the merits of the case, and the disposition of the property, are still determined vis-a-vis the originally named parties"). All that is at issue here is whether Lu transferred an interest that might be used to satisfy a judgment against him, or his sole proprietorship, MGTR. The Court finds that the answer to this question is "yes."

## CONCLUSION

For the foregoing reasons, the Court finds that MGTR, Inc., Citra Mina Holdings, and GJ Fresh all received a transfer of interest from Lu and/or his sole proprietorship MGTR.  The Court also finds that it is in the best interest of this litigation that these parties be joined under Rule 25 (c).  Accordingly, Kowalski's motion is hereby GRANTED, and MGTR, Inc., Citra Mina Holdings, and GJ Fresh are hereby ordered joined as successors in interest to Lu and MGTR.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: April 9, 2008

Kowalski v. Mommy Gina Tuna Resources, et al., Civ. No. 05-00679 BMK; Kowalski v. Citra Mina Seafood Corporation, No. 06-00182 BMK; ORDER GRANTING MOTION FOR APPLICATION OF RULE 25(C)