IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM R. KOWALSKI, | ) | Civ. No. 05-00679 BMK |
| | ) | Civ. No. 06-00182 BMK |
| Plaintiff, | ) | Civ. No. 05-00787 BMK |
| | ) | |
| vs. | ) | **ORDER FURTHER** |
| | ) | **CONSTRUING THE** |
| MOMMY GINA TUNA | ) | **KOWALSKI PATENT, AND** |
| RESOURCES, *et al.*, | ) | **GRANTING IN PART AND** |
| | ) | **DENYING IN PART** |
| | ) | **PLAINTIFF'S MOTION FOR** |
| Defendants . | ) | **PARTIAL SUMMARY** |
| _____ | ) | **JUDGMENT ON** |
| | ) | **INFRINGEMENT** |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITRA MINA SEAFOOD | ) | |
| CORPORATION | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD FRIEND , and | ) | |
| SEAFRIEND | ) | |
| _____ | ) | |

**ORDER FURTHER CONSTRUING THE KOWALSKI PATENT, AND
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
<u>FOR PARTIAL SUMMARY JUDGMENT ON INFRINGEMENT</u>**

Before the Court is Plaintiff's Motion for Partial Summary Judgment
on Infringement. This motion concerns the taste of frozen fish. Specifically,
Plaintiff William R. Kowalski's ("Kowalski") process for applying filtered smoke
to tuna (or other seafood) before freezing it so as to preserve the taste and
appearance of freshness after the fish is frozen and thawed. U.S. Patent 5,972,401,
titled "Process for Manufacturing Tasteless Super-Purified Smoke for Treating
Seafood to be Frozen and Thawed," was awarded to Plaintiff William R. Kowalski
("Kowalski"), on October 26, 1999 (hereinafter "Kowalski Patent"). Kowalski's
process involves three steps: (1) burning organic material to produce smoke, (2)
filtering the smoke to remove components of the smoke that impart odor and taste,
and (3) applying the smoke to tuna (or other meat) before freezing (Kowalski
Patent Col. 22-23, beginning at ln. 65).

Defendants are also in the business of preserving fish with filtered
smoke. Kowalski brought the present actions[1] against Defendants Mommy Gina

---

[1] <u>Kowalski v. Mommy Gina Tuna Resources, et al.</u>, Civ. No. 05-00679 BMK;  <u>Kowalski
v. Integral Seafood LLC</u>; Civ. No. 06-00182 BMK; and <u>Kowalski v. Friend</u>; Civ. No. 05-00787
BMK.

Tuna Resources, King Tuna Inc., Citra Mina, Seafriend, Richard Friend, and Jake

Lu (Collectively "Original Defendants") for infringement of the Kowalski Patent.

Subsequently, Kowalski joined Defendants Mommy Gina Tuna Resources,

Inc.("MGTR, Inc."), GJ Fresh LLC ("GJFresh"), Citra Mina Property Holdings

("Citra Mina Holdings"), and Integral Seafood LLC("Integral") (Collectively

"25(c)  Defendants") under Fed. R. Civ. P. 25(c) as transferees of interest.[2]

It is undisputed that Original Defendants produced, sold or imported

fish that had undergone a process inclusive of the steps claimed by the Kowalski

Patent.  The parties also agree that the fish produced, sold or imported by

Defendants, like fish treated with Kowalski's process, has no traditional smoked or

smoky taste as might be associated with smoked ham or smoked salmon.  Where

the parties disagree is whether the Kowalski Patent claims a process that imparts no

taste whatsoever to fish so treated.  Defendants take the position that it does;

therefore they have introduced evidence, sufficient to withstand summary

judgment, to show that Original Defendants' smoking process does impart a

---

[2]Integral was initially named as a party to <u>Kowalski v. Integral Seafood LLC</u>; Civ. No. 06-00182 BMK in Kowalski's original complaint. However, Integral was dismissed from the case for lack of personal jurisdiction and joined with other 25(c) Defendants in <u>Kowalski v. Mommy Gina Tuna Resources, et al.</u>, Civ. No. 05-00679 BMK.  <u>See</u> Order (1) Granting Defendant Integral Seafood, LLC's Motion to Dismiss for Lack of Personal Jurisdiction; (2) Granting Plaintiff's Counter Motion to Join Integral Seafood, LLC Under Rule 25(C); and (3) Denying Without Prejudice Plaintiff's Counter Motion to Join Mommy Gina Tuna Resources, Inc.; Order Granting Motion for Application of Rule 25(C)

distinct flavor, although not a traditional smoky flavor, to fish so treated.

Kowalski argues that the Kowalski Patent claims are broader, claiming a process

that eliminates all smoky taste imparted by the filtered smoke, but not limited to a

process that preserves the flavor of fresh tuna unchanged.  Under this construction

of the Kowalski Patent, Kowalski contends, Defendants' process manifestly

infringes the Kowalski Patent and Defendants proffer no evidence to rebut this

point.

On July 2, 2008, Kowalski filed a Motion For Partial Summary

Judgement On Infringement. Based on the submissions of the parties, it became

clear that  prerequisite to a determination on infringement the Court must construe

certain language in the claims of the patent.  Specifically, the Court must construe

the adjective *smoke* as used in Claims 1 and 67 of the Kowalski Patent.  The Court

ordered additional briefing from the parties on the proper construction of the

relevant language of the claims of the Kowalski Patent, and on September 22, 2008

held a hearing on this and other issues.

This Court has already construed several terms in the Kowalski

Patent. This Court held <u>Markman</u> hearings to construe claims of the Kowalski

Patent on August 31, 2007 and on November 16, 2007, and provided additional

clarification upon a Motion for Clarification and Reconsideration.[3]  The Court construes the patent in accordance with its prior orders.

Based on the Kowalski Patent's claims and specifications, the prosecution history of the Kowalski patent, parties' submissions in support and opposition to the motions, and the arguments of the parties, the Court CONSTRUES the claims of the Kowalski Patent as set forth below; GRANTS in part and DENIES in part Plaintiff's Motion For Partial Summary Judgment on Infringement.

## STANDARD OF REVIEW

"An infringement analysis involves two steps."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 391 (1996).  First, the Court must construe the terms of the patent claims; next, the construed claims must be compared to the allegedly infringing product or process.  Id.  Claims are construed as a matter of law; the "determination as to whether the claims . . . read on the accused device [or process] presents an issue of fact."  Elkay Mfg. Co. v. EBCO Mfg. Co., et al., 192 F.3d 973, 976 (Fed. Cir. 1999).

---

[3]See Claims Construction Order For The Yamaoka and Kowalski Patents, Oct. 17, 2007; Order Construing Claims 1, 33, 67, 68 and 69 Of The Kowalski Patent, Nov. 19, 2007; Order Granting Motion For Clarification And Reconsideration Of Claims Construction Order, Nov 15, 2007.

The claims of a patent define its scope.  Phillips v. AWH, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Claims are to be construed according to their ordinary custom and meaning as understood by a "a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1312.  A deviation from the ordinary meaning of terms is justified if the patentee has chosen to act as lexicographer or if the patentee has relinquished a potential claim construction in an amendment to the patent or in an argument to overcome or distinguish a reference.  Vitronics Corp. v. Conceptronics, Inc., 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).

In construing patent claims, the Court looks first to the intrinsic evidence consisting of the language of the claims, the specifications of the patent, and, if in evidence, the prosecution history of the patent "for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention." Interactive Gift Express, Inc., v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir 2001) (quoting 35 U.S.C. § 112).  However, all intrinsic evidence is not equal.  Vitronics, 90 F.3d at 1582.  The language of the claims themselves is the first place courts must look in construing patents' claims.  Riverwood Int'l Corp. v. RA. Jones & Co., 324 F.3d 1346, 1347 (Fed. Cir. 2003).  Where the claim language is unclear, the court may

look to the specifications and patent prosecution history to help ascertain the meaning of the claims.  NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1293 (Fed. Cir. 2005); see also Eastman Kodak Co. v. Goodyear Tire & Rubber Co., 114 F.3d 1547, 1552 (Fed. Cir. 1997) (stating that "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language.")

If, after reviewing all intrinsic evidence, the proper construction of the patent claims remains ambiguous, the court may then take into account extrinsic evidence.  Phillips, 415 F.3d at 1317.  Extrinsic evidence consists of all evidence external to the patent and file history, including dictionaries, expert testimony, learned treatises, and prior art.  Markman, 52 F.3d at 979-80.  The Court looks to extrinsic evidence "only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence." "  Interactive Gift Express, 256 F.3d at 1332.

Motions for summary judgment are only granted when the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, courts must

resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Avia Group Int'l v. L.A. Gear California Inc., 853 F. 2d 1557, 1560 (Fed Cir. 1988).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried. Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.  Hodash v. Block Drug Co., 786 F.2d 1136, 1141 (Fed. Cir. 1986).  "Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [the patent claims] is the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment."  Athletic Alternatives v. Prince Mfg., 73 F.3d 1573, 1578 (Fed. Cir. 1996)

The movant bears the initial burden of demonstrating the absence of all genuine issues of material fact. Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984).  Once this initial showing is made by the movant, the burden then shifts to the nonmovant to demonstrate the existence of a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## ANALYSIS

The Kowalski Patent contains 73 claims.  Only the language of claims

1 and 67 are at issue on these motions. The Kowalski Patent claims :

> 1.  A process for treating meat comprising:
> heating organic material to generate smoke having a gaseous
> vapor phase;
> super purifying said smoke to reduce taste imparting
> components below thresholds for imparting ***smoke*** odor
> and taste, whereby a substantially tasteless super-purified
> smoke is created; and
> treating meat having a freezing point with said tasteless super-
> purified smoke.

(Kowalski Patent, Col. 22-23, at 65 (emphasis added.))  The Kowalski Patent also

claims:

> 67.  A process for treating food comprising:
> heating organic material to generate smoke;
> filtering components that impart ***smoke*** flavor from said Smoke
> to below limits for imparting ***smoke*** flavoring to food;
> and
> exposing said filtered smoke to food without imparting a ***smoke***
> flavor to said food.

(Kowalski Patent, Col. 28, at 11-18.(emphasis added.))

The task for the Court is to construe the word ***smoke*** as an adjectival

modifier of the words taste, flavor, and flavoring.  Defendants argue that ***smoke*** in

this context is used to identify the cause or source of the taste or flavor. (Def. Opp.

11 ("Such a flavor change would be the direct result of applying the smoke to the

fish.")) "Even if the taste imparted is not a traditional 'smoky' taste, the smoke

9

imparts a taste and therefore is a 'smoke taste;" (Def. Opp. 11).  Kowalski argues

that in this context the word *smoke* refers to the "unique and distinct flavor, taste

or odor of food that people call 'smoked'." (Pl. Reply 10).  Under this

construction, the Kowalski patent claims a process to produce fish that "does not

have a detectable flavor, taste or odor . . . of smoked food when consumed." (Pl.

Repl 10).

## A.   <u>INTRINSIC EVIDENCE</u>

### 1.   <u>THE PATENT CLAIMS</u>

The starting place for any claims construction analysis is the language

of the claims themselves.  Defendants point to the use of the phrases "tasteless

smoke", "tasteless super purified smoke", "substantially tasteless super purified

smoke" and other variations of the phrase as conclusive proof that the patent

claims a process that imparts no taste to the treated fish.  It is true that the phrase

appears in the claims, throughout the patent as a whole, in the patent prosecution

history, and even in the title of the patent.  However, the words in a claim can

deviate from their ordinary meaning if it is clear that the Patentee intended a

different meaning in the context of the patent.  <u>Markman</u>, 52 F.3d at 980.  This

Court has previously construed these phrases and has found that "'super-purifying'

is a name that can be used for such a reduction of taste causing components and

'substantially tasteless super-purified smoke' is a name that can be used for the resulting smoke that does not impart smoke taste." (Order Construing Claims 1, 33, 67, 68, and 69 of the Kowalski Patent July 19, 2007 10).  In other words, the patentee, exercising his prerogative as lexicographer of the patent, has adopted the phrases "tasteless smoke", "tasteless super purified smoke", and "substantially tasteless super purified smoke" to describe an intermediate or final product of the patented process. These phrases, therefore, have no independent meaning, and despite their ubiquity throughout the patent and related documents, offer no useful guidance for the proper construction of other terms in the claims.

Defendants also find support for their proposed construction of the claims in the language of other claims which suggests a process that imparts no taste or odor whatsoever to the treated fish. The language of Claim 12 includes "filtering the gaseous vapor phase of said smoke to eliminate any remaining odor and taste imparting gaseous vapor compounds and phenols." Claim 60 describes a purification process "to reduce taste and odor imparting particulates and vapors below taste and odor recognition thresholds . . .."

However, several of the claims use language that clearly supports Plaintiff's construction.  These claims describe the same process described in Claims 1and 67, but they unequivocally identify the resulting product  as fish

11

without a traditional smoked or smoky taste.  Claim 46 teaches a process that treats

meat "without imparting a smoky taste to said meat."  Claim 64 teaches a process

that removes "particulate and gaseous vapor compounds . . . that impart smoked

flavor to foods."  Of particular significance are Claims 49 and 50 which use the

modifiers *smoke* and smoky interchangeably.  Claim 49 describes a process to

"eliminat[e] said smoke taste compounds . . .whereby said treated meat does not

have a smoky taste."  Claim 50 describes "eliminating smoke taste compounds . . .

whereby said treated meat does not retain a smoky taste."

      The construction offered by Plaintiff also has the advantage of lending

independent significance to each word in the claims; Defendants' interpretation

would essentially read the modifier *smoke* as irrelevant and unnecessary to the

meaning of the claim.  Claim 1[4], for example, reads in part "super purifying said

smoke to reduce taste imparting components below thresholds for imparting smoke

odor and taste . . .." Under Defendants' construction, the adjective *smoke* can be

deleted without changing the meaning of the claim; with or without the word

*smoke* the claim would be that *no* odor or taste is being imparted.

      Thus, while the language of the claims is susceptible to either party's

proposed construction, Plaintiff's construction is more strongly supported.  The

---

[4]Claim 1 and Claim 67 do not meaningfully differ as relates to this issue of construction.

next step in the claims construction process is to look to the other intrinsic

evidence: the patent as a whole including the specifications, and the prosecution

history of the patent.

## 2.   THE PATENT SPECIFICATIONS

As with the patent claims, the patent specifications provide some

support for the constructions proposed by either of the parties, but the weight of the

evidence favors Plaintiff's construction.  Defendants point to several references to

Plaintiff's patented process that can be interpreted as describing a process that

imparts no taste to the treated meat or fish.  ( Kowalski Patent, Col. 7-8, at 67; Col.

8, at 38-40; Col. 12, at 40-41; Col. 13, at 66-67; Col. 21, at 1-5; Col. 21, at 37-39.)

However, there are also several references that expressly describe a

process that imparts no smoky or smoked taste.  (Kowalski Patent, Col. 3, at 22-23;

Col. 4, at 26-28; Col. 4, at 61-62; Col. 8, at 46-51; Col. 12, at 3-6.)  In addition, the

patent specification  states that the intention of the patent is to produce seafood that

"appears and tastes similar to fresh after it is frozen and thawed."   (Kowalski

Patent Col. 1, at 30 (emphasis added)).  A taste s*imilar* to fresh is distinguishable

from a taste *identical* to fresh, which would comport with the Defendant's

proposed construction.

The specification also states that the gaseous components filtered by

the process are those responsible for "characteristic smoke" flavor.  (Kowalski

Patent, Col 8, at 17-18; Col 8, at 27.)  These references are particularly persuasive

because the Patent uses the modifier *smoke*, not smoky or smoked, but is clearly

referring to a characteristic flavor, i.e. that flavor conventionally attributed to

smoked foods.  This provides strong evidence that the modifier *smoke* is used in

the patent to refer to a smoked flavor.  <u>Vitronics</u>, 90 F.3d at1582. ("The

specification acts as a dictionary when it expressly defines terms used in the claims

or when it defines terms by implication."  (Citing <u>Markman</u>, 52 F.3d at 979.))

### 3.     <u>THE PATENT PROSECUTION HISTORY</u>

The final component of intrinsic evidence that the Court looks to in

construing patent claims is the prosecution history of the patent.  The prosecution

history provides guidance for when a patent term should be read to deviate from its

ordinary meaning because of the way the patent was distinguished from the prior

art in the field.  <u>Vitronics</u>, 90 F.3d at 1582 ("[T]he record before the Patent and

Trademark Office is often of critical significance in determining the meaning of the

claims.")

Defendants point to statements in Patentee's Declaration in Support of

Petition to Make Special Under Rule 102(d) as evidence that the process claimed

imparts no taste whatsoever.  Specifically, the patentee repeatedly distinguishes the

Kowalski Patent from prior art references because those references, "fail to meet the above stated limitation of reducing taste imparting particulates and vapors below recognition thresholds for odor and taste." (Decl. in Supp. of Pet. to Make Special 3).  Defendant argues that in distinguishing the Kowalski Patent from prior art, Kowalski expressly limited the claims to a process that imparts no taste whatsoever to the meat or fish treated.

However, a thorough examination of the Prosecution History of the Kowalski Patent undermines or subverts  Defendant's argument.  In his June 17, 1999 Notice of Allowability, the Patent Examiner states the reason for allowing the patent: "the claimed process . . . defines over prior art of record by comprising the steps of generating smoke, removing smoke odor and/or taste . . . such that the food does not retain a smoky odor or taste."  The Patent Examiner uses the words smoke and smoky interchangeably.  Thus, the Patent Examiner has understood the scope of the patent, despite all Kowalski's references to the tastelessness of the smoke, to claim a process that imparts no smoky taste, rather than a process that imparts no taste at all. This strongly suggests that one of ordinary skill in the art at the time of the invention of the patent would have understood *smoke* taste to mean smoky taste and would have understood tastelessness to refer to an absence of smoky taste.

15

Finally, as shown by his Nov. 28, 1997 Amendment Under 37 C.F.R. 1.111, patentee specifically added the modifier ***smoke*** to several of the Kowalski Patent claims during the patenting process.  This strongly suggests that the word was intended to effect a change in the meaning and scope of the patent claims; Defendants' proposed construction would render the impact of these amendments null.

At the Court's September 22 hearing on these motions, Defendants contended that these amendments impermissibly expanded the scope of the patent. However, this argument is circular, requiring the Court to assume that the Patentee originally intended to claim a process that imparts no taste whatsoever to treated fish.  A more reasonable interpretation of the impact of these amendments is that they clarified the meaning and scope of the patent: a process for treating fish without imparting a traditional smoky or smoked taste.

## B.   <u>EXTRINSIC EVIDENCE</u>

In circumstances where the "intrinsic evidence alone will resolve any ambiguity" as to the proper construction of claim terms, "it is improper to rely on extrinsic evidence." <u>Vitronics</u>, 90 F.3d at 1583.  Here, the weight of the intrinsic evidence clearly favors Plaintiff's proposed construction of the contested claims language.  Therefore, there is no need to resort to extrinsic evidence, indeed it

would be improper to do so.

## C.     THE CLAIMS CONSTRUED

Based on the foregoing evidence and analysis, the Court construes the adjective ***smoke*** as used to modify the words odor, taste, flavor or flavoring in claims 1 and 67 to refer to a traditional smoked or smoky taste. Therefore, the Kowalski Patent is properly construed to claim a process that imparts no smoked or smoky taste to the treated seafood.  The Court rejects the more narrow construction proposed by Defendants that would limit the claims of the Kowalski Patent to a process that imparts not taste whatsoever to the treated meat or seafood.

### INFRINGEMENT BY THE ORIGINAL DEFENDANTS

Given the foregoing construction of the claims of the Kowalski Patent, the Court GRANTS Summary Judgment for Plaintiff on the issue of infringement.  Original Defendants' opposition to the Summary Judgment on infringement is premised on their proposed construction of the patent claims. Original Defendants essentially concede that, under the construction adopted by the Court by this order, infringement has occurred.

Original Defendants argue that they do not infringe the Kowalski Patent because "they do not filter out all taste imparting components in the smoke." (Def. Memorandum  Of Additional Briefing 12).  However, this argument is

predicated on Original Defendants' proposed construction of the Kowalski Patent

claims.  Original Defendants do not claim that their process imparts a smoky taste

to the treated meat and seafood, which would take their process outside the claims

of the Kowalski Patent as construed by this Court.  The declarations of Original

Defendants' own experts state that Original Defendants' process imparts no smoky

taste to the treated meat and seafood.  (Declaration of Seiji Kumagawa 4, "The

King Tuna smoked tuna does not have a smoky smell or taste"; Declaration of

Hidehiro Kumazawa 2, "This smoke flavor is not a traditional smoky flavor.")

Given the Court's construction of the Kowalski Patent claims, Original

Defendants' proffered evidence raises no issue of material fact sufficient to

withstand summary judgment.

## <u>INFRINGEMENT BY THE 25(c) DEFENDANTS</u>

Defendants MGTR, Inc., Integral, GJ Fresh, and Citra Mina Holdings

were joined in this action under Fed. R. Civ. P. 25(c) as transferees of interest.

Rule 25(c) provides in part, "If an interest is transferred, the action may be

continued by, or against the original party unless the court, on motion, orders the

transferee to be substituted in the action or joined with the original party."  Joinder

under 25(c) is proper "[w]hen the successor in interest voluntarily steps into the

shoes of its predecessor, []the court properly assumed jurisdiction over the

18

predecessor and []the predecessor is properly served . . ..” <u>Minn. Mining & Mfg.</u>

<u>Co. V. Eco-Chem, Inc.</u>, 757 F.2d 1256, 1263 (Fed. Cir. 1985).  Application of the

rule avoids the circumstance of a Defendant imposing on a Plaintiff “the immense

burden of chasing the involved assets from courtroom to courtroom.”  <u>Id.</u>

Defendants argue that 25(c) Defendants are not parties as pertains to

the merits of the case, and that Summary Judgment goes to the merits of the case.

(Def. Opp. 14).  It is a well-established rule that “Rule 25(c) is not designed to

create new relationships among parties” but “to allow the action to continue

unabated when an interest in the lawsuit changes hands.” <u>Educ. Credit Mgmt.</u>

<u>Corp. v. Bernal</u>, 207 F.3d 595, 598 (9th Cir. 2000)(citations omitted).  However,

Defendants’ contention that parties joined via 25(c) are quasi parties is incorrect.

<u>See</u> <u>Wainwright v. Kraftco Corp.</u>, 58 F.R.D. 9,13-14 n.1 (N.D. Ga. 1973)(allowing

discovery by and of 25(c) party); <u>Burka v. Aetna Life Ins. Co.</u>,87 F.3d 478, 480

(D.C. Cir. 1996)(upholding District Court’s leave for 25(c) party to amend

complaint and bring additional claim);  <u>Novo Industri A/S v. Travenol Labs. Et al.</u>,

677 F.2d 1202, 1211-12 (7th Cir. 1982) (upholding District Court’s consideration

of actions by 25(c) party subsequent to transfer in calculating damages).

The Court finds the evidence offered by Plaintiff to show independent

infringing conduct on the part of the 25(c) Defendants inadequate for Summary

Judgment.[5]  The proof Plaintiff offers is really in the nature of showing that (1)

interests were transferred from the Original Defendants to the 25(c) Defendants,

and (2) that the interests transferred included the allegedly infringing business

assets and activities that are the subject of this case.  Under this theory, a ruling of

independent infringement by the 25(c) Defendants is unnecessary to establish their

potential liability should Plaintiff prevail against the Original Defendants in this

case.  Rule 25(c) "does not require that anything be done after an interest has been

transferred" and indeed can be used to join a transferee after judgment is already

entered.  Natural Res. Def. Council, Inc., v. Texaco Refining and Mktg., Inc., 2

F.3d 493, 501 (3rd. Cir. 1993)(quoting 7C C. Wright, A. Miller & M. Kane,

Federal Practice and Procedure § 1958, at 555 (2nd ed. 1986)).  The Court

therefore DENIES Plaintiff's Motion for Partial Summary Judgment as to the 25(c)

Defendants.  However, to the extent that the interests transferred are the infringing

business activities that are the subject of this case, any continuing infringing

activity by the 25(c) Defendants subsequent to transfer may be relevant to the

calculation of damages should Kowalski prevail against the original Defendants.

Novo Industri A/S, 677 F.2d at 1211-12; See also Moody v. Albemarle Paper, 50

---

[5]In the case of Citra Mina Holding, a real estate holding company that neither processes, imports, nor sells any fish, Plaintiff does not even hazzard to make the argument.

F.R.D. 494, 498 (E.D.N.C. 1970)("Using the rule does not expand any federal

jurisdiction, but only makes right what has the odorous property of being an unfair

procedural obstacle.")

## <u>CONCLUSION</u>

For the reasons stated above the Court: (1) CONSTRUES the adjectival modifier *smoke* in Claims 1 & 67 of the Kowalski Patent to refer to a traditional smoky or smoked taste; and (2) GRANTS in part and DENIES in part Plaintiff's Motion For Partial Summary Judgment on Infringement.

IT IS SO ORDERED.

Dated: Honolulu, Hawaii, September 30, 2008



      <u>/S/ Barry M. Kurren</u>
      Barry M. Kurren
      United States Magistrate Judge

<u>Kowalski v. Mommy Gina Tuna Resources</u>, Civ. No. 05-00679 BMK; <u>Kowalski v. Citra Mina Seafood Corp</u>, Civ. No. 06-00182 BMK; <u>Kowalski v. Friend</u>; Civ. No. 05-00787 BMK; ORDER CONSTRUING THE WORD SMOKE IN CLAIMS 1 & 67 OF THE KOWALSKI PATENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON INFRINGEMENT.